UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KINO AGGREGATES, INC., <br><br> Defendant. | Case No. 16-cv-02795-HSG (DMR) <br><br> **REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 18 |

Plaintiffs move pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendant Kino Aggregates, Inc. [Docket No. 18]. Plaintiffs seek unpaid contributions, interest and liquidated damages for unpaid and late-paid contributions, as well as attorneys' fees and costs. For the reasons below, the court recommends that Plaintiff's motion be granted.

**I.     BACKGROUND**

   **A.     Factual Allegations**

Plaintiffs Operating Engineers' Health and Welfare Trust Fund for Northern California (which includes the Addiction Recovery Program, Inc.); Pension Trust Fund for Operating Engineers (which includes the Pension Plan for the Pension Trust Fund for Operating Engineers, and the Operating Engineers Annuity Plan); Pensioned Operating Engineers' Health and Welfare Trust Fund; and Operating Engineers and Participating Employers Pre-apprentice, Apprentice and Journeymen Affirmative Action Training Fund (collectively, the "Trust Funds") are employee benefit plans within the meaning of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002. [Docket No. 1 (Compl.) ¶ 1.] Plaintiffs Russell E. Burns and Richard Piombo are Co-Chairmen of the Joint Board of Trustees of the Trust Funds with authority to act on behalf of all trustees. *Id.* Plaintiff Operating Engineers Local Union No. 3 of the

International Union of Operating Engineers, AFL-CIO ("Union") is a labor organization as defined by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152. *Id.* ¶ 2.

Plaintiffs allege that Defendant Kino Aggregates ("Kino Aggregates" or" Defendant") is a Nevada corporation registered to do business in California, and an employer within the meaning of the NLRA, 29 U.S.C. § 152 and ERISA, 29 U.S.C. § 1002. *Id.* ¶ 3.

Kino Aggregates is required to make contributions to the Trust Funds based on the hours worked by its employees pursuant to the Bargaining Agreements with Plaintiffs and various trust agreements. Hayner Decl., Sept. 27, 2016 ("Hayner Decl. I"), ¶ 12. Kino Aggregates entered into an Agreement with the Union (the "2011 Agreement") to make contributions to various trust funds. Hayner Decl. I ¶ 2, Ex. A at 1. The 2011 Agreement was effective from April 1, 2011 through March 31, 2013, and continuing thereafter from year to year unless a party gave written notice to change, amend, modify or terminate. Hayner Decl. I ¶ 3, Ex. A at 18. On March 24, 2014, Kino Aggregates and the Union entered into a subsequent agreement (the "2014 Agreement") to make contributions to various trust funds. Hayner Decl. I ¶ 4, Ex. B at 19. The 2014 Agreement was effective from April 1, 2014 through March 31, 2015, and continuing thereafter from year to year subject to written notice. Hayner Decl. I ¶ 5, Ex. B at 18. On January 30, 2015, Kino Aggregates and the Union signed an Extension of the 2014 Agreement (the "Extension Agreement"), agreeing to certain modifications of fringe benefit rates. Hayner Decl. I ¶ 6, Ex. C at 2. The Extension Agreement was effective from April 1, 2015 through March 31, 2016, and continuing thereafter from year to year subject to written notice. Hayner Decl. I ¶ 7, Ex. C at 2. On March 24, 2016, Kino Aggregates and the Union signed a Memorandum of Agreement, agreeing to a one-year extension and modifications to fringe benefit rates. Hayner Decl. I ¶ 8, Ex. D at 1. The Memorandum of Agreement is effective from April 1, 2016 through March 31, 2017. Hayner Decl. I ¶ 9, Ex. D at 1.

Under these agreements, fringe benefit contributions are due on or before the 15th day of the month following the month in which work was performed. The contributions are delinquent if

not received by the 25th. Hayner Decl. I ¶ 14, Ex. A at 11; Ex. B at 11; Ex. E. at 2.[1] If Kino Aggregates fails to provide timely contributions, it is subject to liquidated damages of 10% of the unpaid contributions. Hayner Decl. I ¶ 15, Ex. A at 13; Ex. B. at 13; Ex. E. at 2. Interest on the unpaid contributions accrues at 10% per year simple interest beginning on the delinquent date. *Id.* If Kino Aggregates fails to make payments, the Union and the Trust Funds may consult legal counsel or file a claim under the four agreements and recover all reasonable expenses including reasonable attorneys' fees, auditors' and accountants' fees, and court costs. Hayner Decl. I ¶ 16, Ex. A at 13; Ex. B. at 14. If a lawsuit to collect delinquent contributions is filed, liquidated damages for unpaid contributions are increased to 20% of the unpaid contributions, or interest on the amount of the unpaid contributions, whichever is greater. Hayner Decl. I ¶ 15, Ex. A at 13; Ex. B. at 13; Ex. E. at 2.

Plaintiffs allege that Kino Aggregates reported but failed to pay contributions due to the Trusts for December 2015 and January 2016. Compl. ¶ 14. Plaintiffs further contend that after the complaint was filed, Kino Aggregates failed to report and pay contributions for the period May 2016 through August 2016. Pls.' Mot. at 9. Plaintiffs also assert that Kino Aggregates made late payment for the periods May 2013 through August 2013, December 2013 through April 2014, August 2014, October 2014, June 2015, October 2015, November 2015, and March 2016. Compl. ¶ 14.

### B. Procedural History

---

[1] While Defendant is not a signatory to the trust agreements for the various trust funds identified in the Collective Bargaining Agreements, the Ninth Circuit has held that a contributing employer need not be a signatory on the trust agreement in order to be bound by those agreements. *See*, *e.g.*, *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990) (finding that while the employer was not a signatory to the trust agreement, that it was bound by the trust agreement because it contributed to the Fund and intended its employees to receive the benefits from the Fund); *Paddack v. Dave Christensen, Inc*., 745 F.2d 1254, 1263–64 (9th Cir. 1984) (finding that although the collective bargaining agreements did not expressly incorporate the trust agreements by reference, it was clear that the parties intended to be bound by the terms of the trust agreement because the collective bargaining agreements specify the basis for the fund contributions is the master trust agreement). Similarly, here, Defendant demonstrated its intent to be bound by the trust agreements that created the various trust funds identified in the collective bargaining agreements because it agreed to make monthly contributions to various trust funds identified in the collective bargaining agreements, and made such monthly contributions in the past.

1    Plaintiffs filed this action on May 24, 2016 pursuant to the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and ERISA, 29 U.S.C. § 1132, to recover unpaid contributions, interest and liquidated damages for unpaid and late-paid contributions, as well as attorneys' fees and costs. Plaintiff served the summons and complaint on Kino Aggregates on June 15, 2016. [Docket No. 11 (Proof of Service of Summons).] After Kino Aggregates failed to appear or otherwise respond to the summons and complaint within the time prescribed by the Federal Rules of Civil Procedure, the clerk entered default on July 26, 2016. [Docket No. 13.] Plaintiffs subsequently filed a motion for default judgment, which the Honorable Haywood S. Gilliam referred to the undersigned for preparation of a Report and Recommendation. [Docket Nos. 18, 23.] The undersigned ordered Plaintiffs to submit supplemental briefing, which Plaintiffs timely filed. [Docket Nos. 26, 28, 30, 31, 32, 33, 36, 37.] The undersigned held a hearing on December 22, 2016. Kino Aggregates did not appear.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."); *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 999.

Before assessing the merits of a motion for default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the

4

Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**III.   ANALYSIS**

    **A.   Jurisdiction and Service of Process**

This court has subject matter jurisdiction pursuant to 29 U.S.C. § 185 (granting labor union organizations the power to sue employers in federal court) and 29 U.S.C. § 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms). Under ERISA, fiduciaries may bring an enforcement action in the federal district court of any district "where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). This nationwide service of process provision permits a court to exercise personal jurisdiction over a defendant anywhere in the United States, regardless of the state in which the court sits. *U.A. Local No. 467 Pension Trust Fund v. Hydra Ventures Inc.*, No. C-12-3746 EMC, 2013 WL 1007311, at *4 (N.D. Cal. Mar. 13, 2013).

Here, Plaintiffs allege that Kino Aggregates is a Nevada corporation registered to do business in the State of California, and is an employer within the meaning of the NLRA, 29 U.S.C. § 152 and ERISA, 29 U.S.C. § 1002. Compl. ¶ 3. Plaintiffs also allege that the Trust Funds are administered in Alameda, California, which is also where the breach took place. *Id.* ¶¶ 7, 9. Thus the court has personal jurisdiction over Kino Aggregates.

The Federal Rule of Civil Procedure 4(h)(1)(B) allows for service of a corporation by delivering a copy of the summons and the complaint to an "agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant." A party may also serve a corporation

"following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1); *see also* Fed. R. Civ. P. 4(h)(1)(A) (authorizing service of process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual"). California law allows for service of a corporation by delivering a copy of the summons and the complaint to "the person designated as agent for service of process." Cal. Civ. Proc. Code § 416.10(a). The copy of the summons and the complaint can be left with the person apparently in charge of the office and thereafter mailed. Cal. Civ. Proc. Code § 415.20.

Here, the record shows that the summons and complaint were served on AABS Inc., which is Kino Aggregates's designated agent for service of process.[2] Stafford Decl., Sept. 27, 2016 ("Stafford Decl. I"), ¶ 4; Docket No. 11 (Proof of Service of Summons). Plaintiffs served Janna Sppano, the "person in charge of the office" of AABS Inc., and also mailed copies to AABS Inc.'s office. [Docket No. 11 (Proof of Service of Summons).] The undersigned therefore finds that service of the summons and complaint was properly effectuated.

### B.   *Eitel* Factors

Considering the first *Eitel* factor, Plaintiffs will suffer prejudice if the court does not enter a default judgment against Kino Aggregates because Plaintiffs otherwise have no means to recover the contributions that Kino Aggregates owes them. *Pepsico, Inc.*, 238 F. Supp. 2d at 1177.

The second and third factors also weigh in favor of default judgment. Plaintiffs' complaint pleads the elements of a violation of 29 U.S.C. § 1145.[3] It claims that under the bargaining agreements and trust agreements, Kino Aggregates is required as an employer to make timely contributions to the Trust Funds and that it failed to do so. Compl. ¶¶ 3, 10-20. Under section 1132(g)(2), a benefit plan that secures a judgment under section 1145 is entitled to unpaid

---

[2] The website for the California Secretary of State indicates that AABS Inc. is the designated agent for service of process for Kino Aggregates. *See* https://businesssearch.sos.ca.gov/CBS/Detail (last accessed on January 22, 2017).

[3] Section 1145 provides, in relevant part, that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

contributions, interest on the unpaid contributions, liquidated damages, and reasonable attorneys' fees and costs. Plaintiffs have thus fulfilled the second and third factors by submitting a legally sufficient complaint which appears to have merit.

The fourth *Eitel* factor is the sum of money at stake in the action. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trustees v. Core Concrete Const., Inc.*, No. C 11-02532 LB, 2012 WL 380304, at *3 (N.D. Cal. Jan. 17, 2012), *report and recommendation adopted*, No. C 11-02532 JSW, 2012 WL 381198 (N.D. Cal. Feb. 6, 2012) (citing *Eitel*, 782 F.2d at 1472). However, "where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Core Concrete*, 2012 WL 380304 at *4. Here, Plaintiffs seek a recover a total of $106,356.11.[4] This sum is tailored to Kino Aggregates' alleged misconduct and is supported by the evidence, including the bargaining agreements, the trust agreements, and Defendant's history of contributions.

As to the fifth factor, Kino Aggregates has neither appeared in this action nor contested any of Plaintiffs' material facts. Finally, nothing in the record suggests that Kino Aggregates defaulted due to excusable neglect. Plaintiffs have served Kino Aggregates with submissions related to the case throughout the pendency of this action (*see* Docket Nos. 22, 24, 27, 29, 35) and Kino Aggregates has failed to participate in the litigation.

In sum, the court finds that the six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference for a decision on the merits. The court therefore recommends that Plaintiff's motion for default judgment be granted.

**C.  Damages**

To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico*, 238 F. Supp. 2d at 1175

---

[4] As discussed in detail below, this sum represents: $61,929.43 (unpaid contributions), $34,137.24 (liquidated damages), $2,811.79 (interest), $6,969.00 (attorneys' fees) and $508.65 (costs). Hayner Decl. I, ¶ 20.

7

(citing *Televideo*, 826 F.2d at 917-18).  With respect to cases arising out of ERISA, the statute declares the following:

> In any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  Interest on unpaid contributions is determined by using the rate provided under the plan.  *Id.*

"It is settled Ninth Circuit law that [an award under Section 1132(g)(2)] is mandatory and not discretionary."  *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (noting the statutory language in Section 1132(g)(2) that "the court shall award the plan" unpaid contributions, interest, the greater of interest or liquidated damages, and reasonable attorneys' fees).  For a mandatory award under section 1132(g)(2), three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award.  *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (citing *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir.1989) (stating that § 1132(g)(2)(C)(ii) "applies when (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages")).

### 1. Unpaid Contributions Delinquent Before Filing of Action

Plaintiffs allege that Kino Aggregates has reported but failed to pay contributions for December 2015 and January 2016.  Compl. ¶ 14.  The total principal balance due on the reported,

1  unpaid contributions is $20,804.55.  [Docket No. 32 (Hayner Decl., Nov. 4, 2016 ("Hayner Decl. II") ¶ 4; Ex. A at 1, 3.)]  As previously noted, if Kino Aggregates fails to make timely contributions, and Plaintiffs file a lawsuit, it is thereafter subject to liquidated damages of 20% of the unpaid contributions and interest accruing at 10% annually.  Hayner Decl. I ¶ 15, Ex. A at 13; Ex. B. at 13; Ex. E. at 2.  Plaintiffs calculate $4,160.91 in liquidated damages, and $1,313.42 in interest.  Hayner Decl. II ¶ 4.

Plaintiffs have satisfied all three requirements for a mandatory award under section 1132(g)(2) because (1) they have alleged in the complaint that Kino Aggregates was delinquent with the contributions and related payments for interest and liquidated damages, *see* Compl. at ¶ 14; (2) the undersigned recommends default judgment against Defendant for the reasons contained herein; and (3) the agreements provide for liquidated damages and interest on delinquent contributions, *see* Hayner Decl. I ¶ 15, Ex. A at 13; Ex. B. at 13; Ex. E. at 2, *see also Idaho Plumbers*, 875 F.2d at 215 (stating section 1132(g)(2)(C)(ii) applies when "the plan provided for damages").

The court thus recommends the Plaintiffs be awarded for the reported, unpaid contributions for December 2015 and January 2016 in the amount of **$20,804.55**, liquidated damages in the amount of **$4,160.91** and interest in the amount of **$1,313.42**.

### 2.   Unpaid Contributions Delinquent After Filing of Action

Plaintiffs also allege that after they filed the complaint, Defendant did not report or pay contributions from May 2016 through August 2016.  Pls.' Mot. at 9.  These contributions became delinquent after the suit was filed on May 24, 2016.  Plaintiffs estimate that the total principal balance due on these unpaid contributions is $41,124.81.  Hayner Decl., Nov. 4, 2016 ("Hayner Decl. II"), ¶ 4, Ex. A at 1, 3.  This estimate is based on an average of the contributions for the last three months that were reported, pursuant to Plaintiffs' internal collection procedures.  Hayner Decl. II ¶ 3.  As noted, if Kino Aggregates fails to make timely contributions after a lawsuit is filed, it is subject to liquidated damages of 20% of the unpaid contributions and interest accruing at 10% annually.  Hayner Decl. I ¶ 15, Ex. A at 13; Ex. B. at 13; Ex. E. at 2.  Plaintiffs calculate liquidated damages for the unreported, unpaid contributions to be $8,224.96 and interest to be

1  $532.98.  Hayner Decl. II ¶ 4.

2  At the outset, the court must determine whether Plaintiffs have met the first requirement for a mandatory award under section 1132(g)(2) because the contributions became due after the lawsuit was filed and therefore were only alleged to be delinquent in the Plaintiffs' motion.  The Ninth Circuit has not addressed whether ERISA allows damages for contributions that became delinquent after the filing of an action, and the district courts are split on this issue.  *Bd. of Trustees of Sheet Metal Workers Health Care Trust of N. Cal. v. B.D. Bridon, Inc.*, No. C-95-1240 MHP, 1995 WL 573701, at *3 (N.D. Cal. Sept. 19, 1995 (demonstrating split among the district courts)).

The court will follow the approach of several courts in this district court that allow Plaintiffs to recover for the unpaid contributions that came due after the filing of the lawsuit.  *See*, *e.g.*,  *Bd. of Trustees of Sheet Metal Workers v. Gen. Facilities*, Inc., No. C 02-4663 CRB, 2003 WL 1790837, at *2 (N.D. Cal. Mar. 31, 2003); *Bd. of Trustees of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1229 (N.D. Cal. 2014); *Buckhorn v. Steiny & Co. Inc*, No. 15-CV-01424-JCS, 2016 WL 3277494, at *6 (N.D. Cal. May 6, 2016), *report and recommendation adopted*, No. 15-CV-01424-HSG, 2016 WL 3257652 (N.D. Cal. June 14, 2016).  To require Plaintiff to file a separate lawsuit to recover for unpaid contributions due after the filing of this lawsuit would "needlessly burden the parties and the courts" and "undermine the policy goals of deterring ERISA violations and recompensing prevailing plans, which goals underline ERISA's compensation scheme."  *Roofers Local Union No. 81 v. Wedge Roofing, Inc.*, 811 F. Supp. 1398, 1401-02 (N.D. Cal. 1992).

The court thus recommends the Plaintiffs be awarded **$41,124.88** for the unreported, unpaid contributions, liquidated damages in the amount of **$8,224.96** and interest in the amount of **$532.98**.

### 3. Late-paid Contributions

Plaintiffs also contend that contributions for May 2013 through August 2013, from December 2013 through April 2014, August 2014, October 2014, June 2015, October 2015, November 2015 and March 2016 were paid, but paid late, before the filing of the action.  Compl. ¶

14. Under the agreements, if Kino Aggregates fails to make timely contributions, it is subject to liquidated damages of 10% of the unpaid contributions and interest accruing 10% annually before a lawsuit is filed. Hayner Decl. I , ¶ 15, Ex. A at 13; Ex. B. at 13; Ex. E. at 2. Plaintiffs calculate liquidated damages for the late-paid contributions to be $21,751.37 and interest to be $965.39. [Docket No. 37 (Brown Decl., Nov. 28, 2016, ¶ 2.)][5]

It is not clear whether ERISA allows liquidated damages on contributions that were paid, but paid late, before the filing of the action. *See Trustees of Bricklayers Local No. 3 Pension Trust v. Huddleston*, No. 10-1708 JSC, 2013 WL 2181532, at *5 (N.D. Cal. May 20, 2013) (discussing split of authority). However, even if a statutory award of liquidated damages is not available for such contributions, Plaintiffs may be entitled to liquidated damages as a matter of contract. *Idaho Plumbers*, 875 F.2d at 217. Such "liquidated damages are a valid award for breach of contract if (1) it is 'very difficult or impossible' to calculate the harm that stems from the breach, and (2) the amount of damages is a 'reasonable forecast of just compensation for the harm.'" *Huddleston*, 2013 WL 2181532, at *6 (quoting *Idaho Plumbers*, 875 F.2d at 217).

Here, the court finds that Plaintiffs are entitled to an award of liquidated damages as a matter of contract because (1) the parties' agreements state that "[i]t would be extremely difficult and impractical to fix the actual damage to the Fund for each Employers' default," *see* Hayner Decl. I ¶ 15, Ex. A at 13; Ex. B. at 13; Ex. E. at 2, and (2) as evident by the parties' agreement, the parties made a good faith effort to establish a liquidated damages rate that "would be a reasonable forecast of just compensation," *see Huddleston*, 2013 WL 2181532, at *6 (citation omitted).

The court thus recommends the Plaintiffs be awarded liquidated damages for the contributions that were paid late but before the filing of the action in the amount of **$21,751.37** and interest in the amount of **$965.39**.

---

[5] These are liquidated damages and interest on "assessed funds." Hayner Decl. II, ¶ 5. Plaintiffs state: "Prior to litigation, not all funds are assessed liquidated damages. For example, prior to litigation, liquidated damages are not assessed on Vacation and Supplemental Dues. Pursuant to the terms of the Collective Bargaining Agreement and the Trust Agreements, prior to litigation, liquidated damages are calculated at ten percent (10%) on only the assessed funds, which are part of the delinquent contributions. The amount of liquidated damages is calculated on a fund by fund basis by using the portion of the contributions paid for that month that is allocated to each specific fund."

11

### 4. Attorneys' Fees and Costs

Pursuant to both 29 U.S.C. § 1132(g)(2)(D) and the four agreements, Plaintiffs are entitled to their attorneys' fees and costs incurred in a suit to enforce payment of outstanding contributions.

Plaintiffs request an award of $5,759.00 in attorneys' fees, representing 34.1 hours expended in this case through September 22, 2016 and an additional anticipated $1,210.00 "in additional attorneys' fees anticipated in connection with the finalization and filing of Plaintiffs' Motion for Default Judgment and supporting documentation thereto, as well as with the preparation for and attendance at the hearing on this Motion." Stafford Decl. I ¶ 16. From March 7, 2016 through August 31, 2016, Plaintiffs seek rates of $220 per hour for Michele Stafford, a law firm shareholder, $215 per hour for Matthew Minser, an associate, and $125 per hour for Alicia Rutkowski, a paralegal. *Id.* ¶ 12. Billing rates were increased in September 1, 2016, and Plaintiffs seek rates of of $235 per hour for Michele Stafford, $230 per hour for Matthew Minser, and $135 per hour for Alicia Rutkowski. *Id.* These are reasonable San Francisco Bay Area rates for ERISA claims. The court therefore recommends that Plaintiffs recover **$6,969.00** in attorneys' fees.

The court also will award costs if "the prevailing practice in a given community [is] for lawyers to bill those costs separately from their hourly rates." *Trs. of Contrs. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quotation marks omitted); *see* 29 U.S.C. § 1132(g)(2)(D). Plaintiffs have incurred $508.65 in costs in the action to date. Stafford Decl. I ¶ 17. Because the court finds that these are reasonable costs, it recommends that Plaintiffs be granted **$508.65** in costs.

### IV. CONCLUSION

For the foregoing reasons, the court recommends that the District Court **grant** Plaintiff's motion for default judgment. The court further recommends that the District Court award Plaintiffs unpaid contributions in the amount of $**61,929.43**, liquidated damages in the amount of **$34,137.24**, interest in the amount of **$2,811.79**, attorneys' fees in the amount of **$6,969.00**, and costs amounting to **$508.65**, for a total of **$106,356.11**.

Plaintiffs shall serve a copy of this order on Defendant Kino Aggregates and file proof of service with the court.  Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

**IT IS SO ORDERED.**

Dated: January 30, 2017



Donna M. Ryu
United States Magistrate Judge